IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE |
| ANDREW AVERY, | NO. 1:14-CR-379-MHC |
| Defendant. | |

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Janet F. King [Doc. 65] that Defendant's Preliminary Motion to Suppress Evidence [Doc. 17], Defendant's Perfected Motion to Suppress Evidence [Doc. 23], Defendant's Motion to Suppress Statements [Doc. 28], Defendant's Motion to Suppress Documents Produced to Securities and Exchange Commission [Doc. 29], and Defendant's Motion to Suppress Documents Obtained by the Government Through Monitorship and Receivership of New Day Atlanta [Doc. 30] be denied. The Order for Service of the R&R [Doc. 66] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt

of that Order. Within the required time period, Defendant filed his objections to the R&R [Doc. 70] ("Def.'s Objs.").

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1)(C), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59. In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of

the R&R to which the parties object and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

Defendant makes twenty separate objections to the R&R, some specifically identifying findings of the Magistrate Judge to which objection has been made, others simply offering conclusory statements or incorporating prior arguments.[1] These objections will be reviewed by this Court *seriatim*.

I. <u>Motion to Suppress Documents Produced to the Securities and Exchange Commission ("SEC").</u>

   A. <u>Alleged Bad Faith Concerning Dual Civil and Criminal Prosecutions.</u>

Defendant objects to the "Magistrate [Judge's][2] determination that he failed to demonstrate bad faith on the part of the Government with respect to the dual

---

[1] To the extent Defendant "incorporates the arguments and citation of authorities presented" in the supporting briefs previously submitted to the Magistrate Judge (Def.'s Objs. at 1), without specifying the factual findings or recommendations that Defendant objects to, those arguments fail. See Smith v. United States, No. 1:11-CV-4015-JEC, 2014 WL 4628501, at *1 (N.D. Ga. Sept. 10, 2014) (rejecting objections where "Movant's objections amount to nothing more than incorporating the same arguments that he presented to the Magistrate Judge.").

[2] This Court notes that, throughout his objections, Defendant's counsel continuously refers to the judicial officer who heard and decided Defendant's pretrial motions as the "Magistrate," when he knows very well that she is one of the Magistrate Judges of the Northern District of Georgia. Section 321 of Pub. L. 101-650 provides: "After the enactment of this Act [Dec. 1, 1990], each United States magistrate appointed under section 631 of title 28, United States Code, shall be known as a United States magistrate judge." It is over twenty-five years since these judicial officers deservedly have been bestowed the title of "Judge."

3

civil and criminal prosecutions of NDA [New Day Atlanta] Financial and Mr. Avery" because of the failure to grant him an evidentiary hearing where facts could be further developed. Def.'s Objs. at 1-2 (citing R&R at 13-14). Defendant cites no authority as to why he is entitled to a hearing based upon the chronology and facts in this case.

It is undisputed that: (1) the SEC opened its investigation of NDA for violations of the securities laws in 2010; (2) prior to his deposition, Defendant was advised that the facts developed in the investigation might constitute violations of federal criminal laws, that any information given may be used against Defendant in a future criminal proceeding, and of his Fifth Amendment right not to provide incriminating information; and (3) Defendant provided testimony at the deposition. R&R at 5-8. As stated by the Magistrate Judge, "Defendant has not alleged sufficient facts to place in issue the legitimacy of the SEC civil investigation or that disclosure of information obtained during that investigation to the USAO [United States Attorney's Office] violated his due process rights." R&R at 10. In addition, as discussed in detail by the Magistrate Judge, numerous cases have

---

Defendant's counsel certainly is entitled to make arguments on behalf of his client against the recommendations of the Magistrate Judge but, in this Court's view, he should treat that judicial officer with the proper respect when doing so. See Ruth Dapper, A Judge By Any Other Name? Mistitling of the United States Magistrate Judge, 9 Fed. Cts. L. Rev. 1, 17 (2015).

acknowledged the propriety of federal authorities pursuing parallel or successive civil and criminal investigations. Id. at 10-13. In this case, the SEC's and USAO's investigations did not overlap, and Defendant has presented no facts that would otherwise entitle him to an evidentiary hearing on this issue.

Accordingly, because Defendant has presented no grounds to establish that the Government has engaged in bad faith or to compel a hearing on his motion to suppress both evidence and statements he provided to the SEC, his objection is **OVERRULED**.

B.   Voluntariness of Defendant's Statements to SEC.

Defendant objects to the Magistrate Judge's rejection of his claim that his Fifth Amendment privilege was violated. Def.'s Obj. at 2-3. Defendant admits that he was advised of and acknowledged his right to assert his privilege against self-incrimination. Id.; R&R at 15-17. Rather, he now contends that his counsel at the SEC was himself under investigation which calls into question the advice received from that counsel. Def.'s Objs. at 2-3.

At his deposition before the SEC, Defendant acknowledged that he was represented by Mr. Bartko (who also represented Mr. Marks) and "was informed that the SEC would assume that any potential conflicts had been discussed with counsel." R&R at 8 (citing March 23, 2010, Investigative Interview of Andrew

Avery, attached as Ex. 1 to Gov't's Resp. to Def.'s Mot. to Suppress Documents Produced to the Securities and Exchange Commission [Doc. 41-1] at 7). Moreover, because he was not facing criminal charges at the time of his SEC deposition testimony, his Sixth Amendment right to counsel did not attach. United States v. Gouveia, 467 U.S. 180, 187 (1984) ("it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only after the time that adversary judicial proceedings have been initiated against him."). Defendant's objection is **OVERRULED**.

    C.    Production of Records to the SEC.

Without citing to any supporting authority, Defendant objects to the Magistrate Judge's finding that he waived his Fifth Amendment privilege with respect to documents produced during the SEC investigation and that the privilege was unavailable with respect to such production. Def.'s Objs. at 3-4. "[A] corporate custodian . . . may not resist a subpoena for corporate records on Fifth Amendment grounds." Braswell v. United States, 487 U.S. 99, 109 (1988). The law is clear that the Fifth Amendment does not apply to the custodian's act of producing such records pursuant to a subpoena. Id. at 119.

Defendant asserts that, because he was not a mere custodian but the sole owner of the business enterprise, he has a heightened interest that was protected by

6

the Fifth Amendment. Def.'s Objs. at 3-4. However, even sole owners of a corporation cannot assert a Fifth Amendment privilege when corporate records are used against them. United States v. Rosenstein, 474 F.2d 705, 715 (2d Cir. 1973); see also In re Agan, 498 F. Supp. 493, 494-95 (N.D. Ga. 1980) ("Production of records may be compelled from an officer even if he is the sole shareholder or alter ego of the corporation."). In addition, as discussed by the Magistrate Judge, even if Defendant had such a Fifth Amendment privilege, "he waived the privilege by failing to assert it in response to the subpoena." R&R at 22 (citations omitted). As stated previously, Defendant was fully advised of his Fifth Amendment rights prior to his deposition and "apparently understood them" because "certain emails were withheld from production for review by his counsel." Id. at 23.

Defendant's objection is **OVERRULED**.

II.     Motion to Suppress Documents Produced to the Receiver.

Again, without citation to any authority, Defendant objects to the Magistrate Judge's "determination that he lacked a reasonable expectation of privacy to challenge any seizure of records" which were acquired from the court-appointed receiver,[3] and to the denial of a hearing on this issue. Def.'s Objs. at 4-5. The

---

[3] To the extent Defendant re-asserts his Fifth Amendment objections with respect to the business records of NDA, Def.'s Objs. at 4, that objection is **OVERRULED** for the same reasons as discussed in Section I(C), *supra*.

7

District Court previously appointed a receiver for NDA and issued an order that authorized the receiver exclusive access and control over all the records of NDA, which authorization included consenting to any search and seizure of NDA records.  SEC v. New Day Atlanta, LLC, et al., No. 1:10-CV-1333-TCB (N.D. Ga. July 22, 2010) (Order Appointing Neil Gordon, Esq. as Receiver for New Day Atlanta, LLC at 4-5), attached as Ex. 2 to Gov't's Resp. to Mot. to Suppress Documents [Doc. 42-2].  "[A]fter a receiver validly takes possession of records and other property, becoming their 'lawful custodian,' the original owner has lost any 'reasonable expectation that those records would remain private.'"  United States v. Setser, 568 F.3d 482, 491 (5th Cir. 2009) (quoting United States v. Gray, 751 F.2d 733, 737 (5th Cir. 1985)).  Because there was no violation of Defendant's Fourth Amendment rights by the receiver's production of NDA records to law enforcement authorities, Defendant's objection is **OVERRULED**.

III.    Evidence Obtained by Lee Marks

Defendant asserts that the transfer of documents and records from Lee Marks to the Government constituted an unlawful Fourth Amendment seizure and violated Defendant's right against self-incrimination.  To the extent that these records are duplicative of the materials obtained through the SEC civil

8

investigation or from the Receiver, Defendant's motion to suppress evidence obtained by Lee Marks is **DENIED AS MOOT**.

Defendant first objects to the Magistrate Judge's statement that, following the evidentiary hearing, Defendant "appears to have abandoned his arguments that Marks acted at the direction of the Government in seizing the documents and materials and that Marks' action in relinquishing the materials and documents constituted a separate invasion of his privacy interests . . . ." Def.'s Objs. at 6 (citing R&R at 31). However, rather than discussing these arguments, Defendant challenges the manner in which the Government utilized the grand jury process to subpoena Marks' records. Id. Defendant is merely repeating arguments made to and rejected by the Magistrate Judge. R&R at 49-50. In addition, Defendant does not cite any law to negate the cases cited by the Magistrate Judge to support her conclusion that the grand jury process was not abused by the Government. Id. at 50-55.

> [T]he court finds that Defendant has not carried his burden of establishing that the subpoena issued to Marks was improper or that the prosecutor's conduct constituted an abuse of the grand jury process. She was authorized, on behalf of the grand jury, to obtain a subpoena duces tecum and issue it to Marks, even if the grand jury was not aware she had issued the subpoena. . . . There is no indication, much less proof, that the subpoena to Marks was issued for an improper purpose, that the prosecutor abused the grand jury's investigatory powers or that the information and materials were not properly returned to the grand jury before the indictment was

9

returned. The court declines Defendant's invitation to examine the grand jury's records under there circumstances. The subpoena to Marks was "issued through normal channels" and is therefore "presumed to be reasonable."

Id. at 55-56 (quoting United States v. R. Enterprises, Inc., 498 U.S. 292, 301 (1991)). Defendant presents no new argument or authority that would cause this Court to reject the findings or conclusions of the Magistrate Judge.

Defendant next challenges the R&R's statement "that Mr. Marks copied a folder which contained some important files from Mr. Avery's laptop computer to the server," alleging that Marks in fact "copied multiple folders" from Defendant's computer and "the entire .pst file, which would have included all e-mails that were in Mr. Avery's Outlook, both business and personal." Def.'s Objs. at 7 (citing R&R at 33). At the evidentiary hearing, Marks in fact admitted that he backed up locally stored e-mails, including Defendant's, to the NDA server, a fact specifically found by the Magistrate Judge in the sentence in the R&R prior to the one quoted by Defendant. See R&R at 33 ("In September 2009 and prior to contact with the SEC, Marks backed-up locally stored emails and NDA documents to the office server as a precaution against loss."). Importantly, Marks was not acting at the Government's direction but for his own personal benefit when he copied these and other records and files onto his personal laptop. Tr. of Oct. 14, 2015, Evidentiary Hearing [Doc. 57] ("Tr.") at 8-10, 23-24. It is also undisputed

10

that the Government has agreed not to use any emails received after Marks began cooperating with the Government. Gov't's Resp. to Suppression Motion [Doc. 26] at 3 ("The government has agreed not to use any documents obtained by Marks from Avery's email or Facebook accounts after September 17, 2014 in its case in chief").

Next, Defendant objects "to the assertion" that Marks was acting for his own benefit "and, by implication, not for the benefit of the Government when he copied the NDA server in May 2010" and accessed Defendant's accounts. Def.'s Objs. at 7. Although admitting that "Mr. Marks was acting with a degree of self-interest," Defendant asserts that Marks was "seeking or planning to help himself by helping the Government, which is what he eventually did." Id. at 8. Indeed, the facts show that when Marks copies the NDA office server into his own laptop, he was not acting at the Government's direction, and Defendant has presented no evidence to indicate otherwise. Tr. at 27 ("Q. [D]id you notify any government employee or agent of any type that you were accessing Mr. Avery's e-mails? A. No. Q. Did any government individual instruct you to do that?" A. No."). The reason Marks stated that he undertook this action was that "it was important to have the company documents in case I needed to defend myself in a case, if I didn't have access to the server files." Id. at 8. As stated by the Magistrate Judge, "the Defendant's

11

Fourth Amendment right's (sic) are not impacted by Mark's seizure and search of the NDA office server and of Defendant's personal email account." R&R at 41 (citing United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003)).

Defendant contends that the Magistrate Judge erred by concluding that he no longer had any expectation of privacy once the contents of the NDA server and his personal e-mails were accessed by Marks, and that the Government's later review of those items constituted a separate search. Def.'s Objs. at 8-9. Again, Defendant cites no case law to support his contention that the Magistrate Judge misapplied the law cited in the R&R. "We have long recognized that a police view subsequent to a search conducted by private citizens does not constitute a 'search' within the meaning of the Fourth Amendment so long as the view is confined to the scope and product of the initial search." United States v. Bomengo, 580 F.2d 173, 175 (5th Cir. 1978);[4] see also United States v. Simpson, 904 F.2d 607, 609 (11th Cir. 1990) ("such facts, without more, do not establish that the private party acted as an agent of the Government at the time of the search." (citing Bomengo)).

Finally, Defendant objects to two factual findings in the R&R that he claims are not supported by the record. First, "[c]ontrary to the indication in the R&R, the

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

12

record does not establish that Mr. Marks worked as an office administrator for NDA." Def.'s Objs. at 9 (citing R&R at 44). Marks testified that he was a founding member of NDA and a "50/50 partner" with Defendant, that he later left the partnership and worked for NDA as an independent contractor, and that, in this latter capacity, he had "access to NDA documents, electronic or otherwise" and complete access to the NDA server. Tr. at 6-7. The R&R found that "Marks was initially part owner of the business and then worked as an independent contractor handling IT matters and as office administrator with full access to the materials and information relating to the operations of NDA." R&R at 44. The fact that Marks may not have had the title of "office administrator" is completely irrelevant to the fact that, as an independent contractor, he had complete access to the operations of NDA, which is akin to the function of an office administrator. Marks' actual "title" is irrelevant to the responsibility he possessed, so even if the Magistrate Judge's partial reference is in error, it obviously is harmless with respect to her overall legal conclusion.

Second, Defendant contests that conclusion reached by the Magistrate Judge that "Marks was reviewing [Defendant's] emails as he received them." Def.'s Objs. at 9. That is certainly a conclusion supported by the following testimony of Marks:

13

> Q. So, once you entered into Mr. Avery's personal Gmail account, what did you do?
>
> A. I set up a forwarding e-mail so that the e-mail that came in would be forwarded to an e-mail address that I had access to.
>
> Q. And was a copy sent to you?
>
> A. A copy was sent.
>
> Q. Okay. At that point did you notify Mr. Avery that you had done this?
>
> A. No.
>
> Q. Why did you have his incoming e-mails forwarded to you?
>
> A. I was kind of nervous that he might not be – that he might have left the country and would not be there to be a part of any kind of case against the company and I just wanted some way to track where he might be.

Tr. at 20. As Marks received a copy of each e-mail sent to Defendant's Gmail account at the time the e-mail was received by Defendant, and was interested in learning Defendant's continual whereabouts, it is reasonable to conclude that Marks was monitoring those emails as they were received.

Therefore, Defendant's objections to the Magistrate Judge's rulings on his motion to suppress evidence obtained by Lee Marks are **OVERRULED**.

IV.   Grand Jury Subpoena

Defendant objects to the Magistrate Judge's refusal to view the transcript of the grand jury proceedings *in camera* to determine whether the issuance of the grand jury subpoena to Marks was improper. Def.'s Objs. at 9-10. As stated above, this Court agrees with the Magistrate Judge that Defendant did not carry his burden to establish that the Marks grand jury subpoena was improper or constituted prosecutorial misconduct. The Magistrate Judge conducted a detailed review of case law and determined that Defendant "has not carried his burden of establishing that the subpoena issue to Marks was improper or that the prosecutor's conduct constituted an abuse of the grand jury process." R&R at 55; see also R&R at 50-54. It was not an abuse of discretion for the Magistrate Judge to decline Defendant's invitation to examine grand jury records. See In re Grand Jury Proceedings, 616 F.3d 1186, 1205 (10th Cir. 2010) ("the district court abused its discretion in engaging in an *in camera* review of subpoenaed material to address relevancy. . . . only highly unusual circumstances would warrant such a procedure for assessing relevancy."); United States v. Dusenbery, No. 94-3804, 1996 WL 306517, at *2 (6th Cir. June 6, 1996) (holding that the district court did not err in denying motion for inspection of grand jury materials where order for electronic surveillance was reasonable in light of scope of inquiry).

15

To the extent that Defendant "re-lodges" his objections to the Magistrate Judge's assertion that he lacked any privacy interest in the information provided by Marks and rejected his argument that he retained an exclusive right of possession top the documents maintained by NDA, Def.'s Objs. at 10, those objections previously have been overruled. See Section III, *supra*.

> As discussed, after the SEC investigation began, Defendant apparently fled and Marks was afraid of being left to alone answer allegations regarding NDA operations. In order to be able to track Defendant's whereabouts, without Defendant's knowledge, Marks accessed Defendant's private Gmail account and changed account settings so that he would receive a forwarded copy of each email Defendant has received. Those emails were included in the information produced in response to the grand jury subpoena. Defendant's argument seeking suppression of these emails is not persuasive.

R&R at 60-61 (internal record citations omitted).

Defendant also takes exception to the Magistrate Judge's determination that his personal emails were not protected from disclosure based upon a Fifth Amendment privilege. Def.'s Objs. at 10-11. Defendant relies upon In re Grand Jury Subpoenas Served February 27, 1984, 599 F. Supp. 1006, 1010-11 (E.D. Wash. 1984), which does not stand for the proposition that a Fifth Amendment privilege exists based upon the contents of private documents and, as discussed by the Magistrate Judge, has been itself undermined by the decision of the Ninth Circuit in In re Grand Jury Proceedings on February 4, 1982, 759 F.2d 1418 (9th

16

Cir. 1985). R&R at 61-63; see also Fisher v. United States, 425 U.S. 391, 414 (1986) (holding that compliance with a summons directing a taxpayer to produce an accountant's documents, which were not taxpayer's private papers, does not implicate the Fifth Amendment); Fagan v. United States, 545 F.2d 1005, 1007 (5th Cir. 1977) (holding that Fifth Amendment protection does not amount to a general privilege for private documents).

Finally, Defendant objects to the Magistrate Judge's determination that Marks' acquisition of his personal e-mails did not violate the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq*. Def.'s Objs. at 11. Pretermitting the question of whether the SCA even applies to Marks' private collection of Defendant's e-mails, the SCA provides for a private right of action against violators other than the United States and does not provide for suppression as a remedy in criminal proceedings. United States v. Wilson, No. 14-12945, 2015 WL 8121493, at *2 (11th Cir. Dec. 8, 2015) (citing 18 U.S.C. § 2707).

Consequently, Defendant's objections concerning the Magistrate Judge's determinations concerning the grand jury subpoena are **OVERRULED**.

V.   Conclusion

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant objects, the Court **OVERRULES** his objections [Doc. 70]. Finding no

clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 65] as the Opinion and Order of the Court.

It is hereby **ORDERED** that:

(1) Defendant's Preliminary Motion to Suppress Evidence [Doc. 17] is **DENIED**;

(2) Defendant's Perfected Motion to Suppress Evidence [Doc. 23] is **DENIED**;

(3) Defendant's Motion to Suppress Statements [Doc. 28] is **DENIED**;

(4) Defendant's Motion to Suppress Documents Produced to Securities and Exchange Commission [Doc. 29] is **DENIED**; and

(5) Defendant's Motion to Suppress Documents Obtained by the Government Through Monitorship or Receivership of New Day Atlanta [Doc. 30] is **DENIED**.

**IT IS SO ORDERED** this 21st day of March, 2016.

_____
MARK H. COHEN
United States District Judge